UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

RONALD A. CORMIER,

    Plaintiff,

vs.                                                                   CASE NO. 3:10-cv-787-J-TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____

## ORDER AND OPINION

    This matter is before the Court on Plaintiff's complaint (Doc. #1), seeking review of the final decision of the Commissioner of Social Security (Commissioner) that found Plaintiff was disabled under the Social Security Act only for a closed period of time and therefore granted in part and denied in part Plaintiff's applications for disability insurance benefits (DIB) and supplemental security income (SSI) disability payments.  Plaintiff filed a legal brief in opposition to the Commissioner's decision (Doc. #28, Plaintiff's Brief).  Defendant filed his brief in support of the decision to deny disability benefits (Doc. #29, Defendant's Brief).  Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by the Order of Reference dated November 30, 2011 (Doc. #26). The Commissioner has filed the transcript of the of the underlying administrative proceedings and evidentiary record  (hereinafter referred to as "Tr." followed by the appropriate page number).

    The Court has reviewed the record and has given it due consideration in its entirety, including the arguments presented by the parties in their briefs and the materials provided

in the transcript of the underlying proceedings. Upon review of the record, the Court found the issues raised by Plaintiff were fully briefed and concluded oral argument would not benefit the Court in making its determinations. Accordingly, the matter has been decided on the written record. For the reasons set out herein, the decision is **AFFIRMED**.

## I. PROCEDURAL HISTORY

This case is an appeal under Title 42 U.S.C. § 405(g) of a final administrative decision of the Commissioner of Social Security, which found Mr. Cormier[1] was entitled to disability insurance benefits for a closed period of time from November 7, 1999 through January 27, 2002 (Tr. 777-796). On September 7, 2001, Cormier filed applications for DIB and SSI, in which he alleged an onset of disability beginning November 7, 1999 (Tr. 112-14).[2] Plaintiff's applications were denied initially and on reconsideration (Tr. 26-33), and a hearing was held on September 9, 2004 (Tr. 607-61). An administrative law judge (ALJ) issued an unfavorable decision on October 18, 2004 (Tr. 12-25). The Appeals Council denied Plaintiff's request for review of the ALJ's decision on July 26, 2005 (Tr. 5-7) and the Court reversed and remanded the case on September 12, 2006, to re-assess Plaintiff's subjective complaints and to re-evaluate the evidence from Dr. Stephen Waters

---

[1]Herinafter identified as "Cormier" or "Plaintiff."

[2]There are other disability applications in the administrative record. Plaintiff filed for DIB on February 29, 2000 and again on February 1, 2001 (Tr. 115-120). At what stage these applications were adjudicated is unknown, but neither party raises an issue pertaining to either of the older applications. The "Archive Retrieval" of the Social Security Administration indicates other applications were also filed, but the undersigned declines to address that information either, as it is not an issue before the Court. *Id.*
    The Court does not find Plaintiff's SSI application within the administrative record. Such omission, however, is harmless as the ALJ found Plaintiff remained insured for DIB through December 31, 2001 (*see* Tr. 783).

(Tr. 725-733). The Appeals Council remanded the case to the ALJ (Tr. 734-736). An ALJ issued a second unfavorable decision on September 26, 2007 (Tr. 668-81). Upon the Appeals Council's denial of review, the case was again filed in federal court. After the Commissioner submitted a motion for entry of judgment with remand, the Court remanded this case to address the issues noted in the previous remand order and opinion (Tr. 799-810).

Afterward, the Appeals Council remanded the case to the ALJ and another ALJ held a hearing on April 9, 2010 (Tr. 903-32). Plaintiff appeared and testified at the April 2010 hearing, as did vocational expert (VE) Robert Strader. Plaintiff was represented at the administrative hearing by Ms. Pam Dunmore.[3] ALJ Lisa B. Martin thereafter issued a partially favorable decision on May 5, 2010, finding that Plaintiff was disabled from November 7, 1999 through January 27, 2002 but not thereafter (Tr. 777-96). Plaintiff current counsel of record, N. Albert Bacharach, Jr., Esq., filed this action in federal court on September 1, 2010 (*see* Doc. #1, complaint).[4] Defendant's counsel acknowledges this case is ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3). Defendant's Brief at 2.

## III. THE STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence.

---

[3]Ms. Dunmore appears to be affiliated with the Law Offices of N. Albert Bacharach, Jr. (*see* Tr. 54-56).

[4]Although the Appeals Council's ruling on the May 2010 decision does not appear to be in the administrative record, no one has challenged the timely filing of this case in federal court, nor has either party suggested that decision was not the final decision of the Commissioner.

3

*Richardson v. Perales*, 402 U.S. 389, 390 (1971); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).  For purposes of determining whether a claimant is disabled, the law and regulations governing a claim for disability insurance benefits are identical to those governing a claim for supplemental security income benefits.  *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986).  The Commissioner's findings of facts are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so.  While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (*citing Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).  Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the reviewing court must not re-weigh the

evidence, but must determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled. *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

## IV. SOCIAL SECURITY ACT STANDARD FOR DISCONTINUATION OF DISABILITY BENEFITS

In this case, the parties do not challenge, and the Court agrees, that upon determining Plaintiff was entitled to a closed period of disability, the ALJ was required to examine whether the Plaintiff had experienced medical improvement since the date on which the ALJ found Plaintiff's disability had ceased. *See Pickett v. Bowen*, 833 F.2d 288, 291-93 (11th Cir. 1987) (finding the medical improvement standard was the standard of review for "closed period claimants"); *see also Waters v. Barnhart*, 276 F.3d 716, 718-19 (5th Cir. 2002) (citing cases with approval that the medical improvement standard applies to the cessation date in closed period cases).

The Commissioner has established an eight step sequential process used to determine whether medical improvement has occurred and whether a claimant's disability benefits should cease. 20 C.F.R § 404.1594(f)[5]. The *first* question is whether the claimant is engaged in substantial gainful activity. *Id.* If not, the *second* question is whether the

---

[5]Unless otherwise specified, all references to 20 C.F.R. will be to the 2012 edition. As the regulations for SSI disability payments mirror those set forth for DIB on the matters presented in this case, from this point forward the Court may refer only to those sections in 20 C.F.R. pertaining to part 404 and disability insurance benefits.

5

claimant has an impairment or combination of impairments which meets or equals the severity of an impairment in the Listings.[6]  *Id.*

If the claimant's impairments do not meet or equal a listed impairment, the *third* step is to determine whether there has been medical improvement. *Id.* If so, the *fourth* question is whether the claimant's improvement is related to his or her ability to work based upon the claimant's residual functional capacity.  *Id.*  The *fifth* question is whether any exceptions apply under subsections (d) (relating to advances in medical treatments and/or therapies that may have improved a claimant's condition etc.) and (e) (relating to the prior determination of disability being found in error or was fraudulently obtained etc.)  *Id.*

At the *sixth* step, if it has been determined that there has been medical improvement, it must then be determined whether all the claimant's *current* impairments in combination are severe.  *Id.* (emphasis added).  If it is found that the claimant's current impairments are severe, it must then be determined, at the *seventh* step, whether given current impairments, the claimant is able to engage in the type of work he or she had done in the past.  *Id.*

At the *eighth* and final step, if the claimant is not able to engage in the type of work done in the past, the SSA must consider, given the claimant's *current impairments*, age,

---

[6]The Listing of Impairments (the Listings) is in appendix 1 of 20 C.F.R. Pt. 404 Subpt. P. It describes for each of the major body systems impairments that the Commissioner considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience. 20 C.F.R. § 404.1525(a).  The specific Listings follow the introduction in each body system, after the heading, Category of Impairments. Within each Listing, the objective medical and other findings needed to satisfy the criteria of that listing are specified. An impairment meets the requirements of a Listing when it satisfies all of the criteria of that Listing, including any relevant criteria in the introduction, and meets the duration requirement. 20 C.F.R. § 404.1525 (c)(3).

education, and past work experience, whether the claimant is able to engage in other substantial gainful activity. *Id.* (emphasis added).

## V. ISSUES AND ANALYSIS

The question presented is whether the ALJ erred in determining Plaintiff was disabled under the Social Security Act for only a closed period of time. *See generally*, Plaintiff's Brief. In this regard, Plaintiff specifically challenges the ALJ's determination of Plaintiff's credibility regarding Plaintiff's pain testimony. Plaintiff's Brief at 19-23 To support his position, Plaintiff asserts the ALJ failed to properly credit Plaintiff's pain testimony after January 27, 2002, the date on which the ALJ determined Plaintiff's disability ceased. *Id.*

Defendant counters that substantial evidence supports the closed period of disability and the ALJ's findings in this case. *See generally* Defendant's Brief. Defendant correctly argues the ALJ's decision was decided by the proper legal standards. *Id.* Defendant notes the extensive reliance the ALJ gave to the treatment and opinion evidence of Plaintiff's treating physician, Dr. Stephen Waters, and argues this evidence, *inter alia*, supports the ALJ's determination that Plaintiff was disabled for a limited period of time. Defendant's Brief at 8-14.

In the instant case, the ALJ found that Plaintiff Cormier experienced medical improvement beginning January 28, 2002 (Tr. 791). Relying in large part on the Work Status Note and the treatment note dated January 25, 2002 from Dr. Stephen Waters, M.D., Plaintiff's treating physician, the ALJ found the medical evidence supported her determination that Cormier had the ability to perform sedentary work with additional restrictions starting January 28 (Tr. 791). These notes from Dr. Waters stated Plaintiff may return to light duty work on January 28, 2002 (Tr. 571-72).

Notwithstanding the evidence of these notes, Plaintiff argues the ALJ did not properly consider his pain testimony. Plaintiff's Brief at 19-23. Under the Eleventh Circuit pain standard, a claimant must provide evidence of an underlying medical condition and must produce objective medical evidence confirming the severity of the alleged pain or evidence that the determined medical condition is of the severity which can reasonably be expected to give rise to the degree of pain or symptoms alleged. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). In 20 C.F.R. § 404.1529, the regulations provide that a claimant's statements about pain or other symptoms will not alone establish disability. Rather, medical signs and laboratory findings must be present to show a medical impairment that could reasonably be expected to produce the symptoms alleged. "Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques... *must be considered* in reaching a conclusion as to whether the individual is under a disability." 42 U.S.C. § 423(d)(5)(A) (emphasis added).

In challenging the ALJ's credibility determination, Plaintiff takes issue with the ALJ's use of her observations during the hearing and her consideration of the treating physician opinions. Plaintiff's Brief at 19-23. A careful reading of the decision, however, reveals the ALJ considered the appropriate factors in making her determination of Plaintiff's credibility. The Court's independent review of the record finds substantial evidence supports the ALJ's findings.

**The Determination of Plaintiff's Credibility Under the Pain Standard**

When making a credibility determination, the decision maker's opinion must indicate an appropriate consideration of the evidence. *Tieniber v. Heckler*, 720 F.2d 1251, 1255

8

(11th Cir. 1983) (internal citation omitted). Under *Foote v. Chater*, if proof of disability is based upon subjective evidence and a credibility determination is critical to the decision, the ALJ must articulate adequate reasons for rejecting allegations of pain. 67 F.3d at 1561. A reviewing court, however, will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Id.* at 1561-62; *see also* 42 U.S.C. § 405(g) (the findings of the Commissioner as to any fact are conclusive if supported by substantial evidence).

Here, the ALJ determined that Plaintiff's testimony concerning "the limiting effects of his symptoms [were] generally credible" from November 7, 1999 through January 27, 2002 (Tr. 787). The ALJ also stated she gave "some weight to [Cormier's] hearing testimony, but note[d] inconsistencies with his testimony that reflect negatively on his credibility beginning January 28, 2002" (Tr. 792). As support for this credibility determination, the ALJ refers to Dr. Waters treatment and work status notes, the improvement in Plaintiff's hip condition after surgery, Plaintiff's demeanor at the hearing, Plaintiff's daily activities, and the somewhat conservative nature of Plaintiff's pain medication management (Tr. 792-94).

In making credibility determinations, the regulations provide the ALJ is expressly permitted to consider the claimant's activities of daily living; the location, duration, frequency and intensity of symptoms; any precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication taken to alleviate symptoms; the treatment, other than medication, received for symptoms; any measures used to alleviate symptoms; and, other factors concerning functional limitations due to symptoms. *See* 20 C.F.R. § 404.1529(c); *also see* Social Security Ruling (SSR) 96-7p, 1996 WL 374186

(S.S.A. Jul. 2, 1996). Moreover, an ALJ may properly consider a claimant's appearance and demeanor at the hearing in making credibility determinations. *See Macia v. Bowen*, 829 F.2d 1009, 1011 (11th Cir. 1987) (quoting *Norris v. Heckler*, 760 F.2d 1154, 1158 (11th Cir. 1985)); *also see* SSR 96-7p, 1996WL 374186 at *5 (noting that in instances where the individual attends an administrative proceeding conducted by the adjudicator, the adjudicator may also consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements).

In this case, the ALJ found Plaintiff was partially credible and relied on substantial evidence in the record to support that finding. The ALJ relied, in part, on the fact that Plaintiff's treating doctor cleared Plaintiff to go back to work with permanent light work restrictions (Tr. 792-93; Tr. 571-72, 718-23).[7] The ALJ noted also that during a follow-up visit on April 20, 2005, Plaintiff thought he had an infection of his right hip, but physical examination showed no outward signs of infection, and no visible swelling, erythema, fluctuance or tenderness (*see* Tr. 709, 793). Plus, Plaintiff could move his hip fully and a subsequent x-ray showed no obvious signs of infection. *Id.* The ALJ correctly considered Plaintiff's medications, noting that Plaintiff testified he took only 10 mg of Lortab at a time, which might occur one to four times during any given day (Tr. 792, 913-15, 923). Although Plaintiff testified he had not taken any pain medication on the day of the hearing, the ALJ was able to observe Plaintiff looked only mildly in discomfort, at times was smiling and

---

[7]Dr. Waters found Plaintiff was at maximum medical improvement on January 25, 2002 (Tr. 722). In June 2002, Dr. Waters temporarily determined Plaintiff should not work until the results of a hip aspiration scheduled that month were known (Tr. 565-67, 570). The ALJ properly indicated that Plaintiff's right hip aspiration that occurred on June 13, 2002, was successful (Tr. 566, 793).

joking, and articulately answered questions throughout the hearing (Tr. 792, 907-925). In reaching her determination of Plaintiff's credibility, ALJ Martin correctly considered Plaintiff's daily activities as one factor in that finding (Tr. 792). Among other specifics, the fact Plaintiff walked his dog twice a day around a lake located two minutes from his house, on an uneven surface with a medium downhill slope, suggested Plaintiff was not as limited by his asserted disability as claimed (Tr. 792, 918-20).

ALJ Martin expressly stated she considered Plaintiff's subjective complaints, but ultimately rejected them for a portion of the period under consideration because the record established that Plaintiff's condition improved (Tr. 790-94). Particularly, the ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms (Tr. 793). However, Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible beginning January 28, 2002 to the extent that they were inconsistent with the RFC assessment (Tr. 793).

Here, the ALJ did not discredit Plaintiff's subjective testimony solely on the basis of her observations or Plaintiff's activities, but relied on a number of factors supported by substantial evidence to make that determination. *See Macia*, 829 F.2d at 1011; SSR 96-7p, 1996 WL 374186 at *3-*5. Contrary to Plaintiff's assertion, the ALJ explicitly considered Plaintiff's back and neck pain, as well as his hip pain (*see* Tr. 792-94). Plaintiff's allegation that the ALJ improperly discredited Plaintiff's pain testimony is without merit.

**Treating Physician Opinions**

The opinions and diagnosis of a treating physician are entitled to special deference under the regulations and the law in this circuit. Substantial weight must be given to the

opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(c).

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(c)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  *See Edwards v. Sullivan*, 937 F.2d at 583.  In this case, however, examination of the medical records of Plaintiff's physicians reveals nothing in the evidence, including the treatment notes, provides support of Plaintiff's claims of *disabling pain* or *physical limitations beyond what the ALJ found*.

In this case, the ALJ properly relied on Dr. Waters' treatment notes in assessing the severity of Plaintiff's limitations and determining Plaintiff was disabled for a closed period. The ALJ devoted and extensive portion of her decision to discussion of Dr. Waters' treatment records of Plaintiff (*see* Tr. 788-790).  The ALJ noted that Dr. Waters completed a Work Status Note dated January 25, 2002, that stated Plaintiff could return to light duty work on January 28, 2002 (Tr. 572, 793). Although Dr. Waters remarked that Plaintiff was permanently restricted to lifting no more than twenty-five (25) pounds, not climbing ladders, and not kneeling or squatting, he later completed Work Status Notes from August to October 2002 that indicated Plaintiff then could lift 35 pounds (Tr. 720), and other treatment notes in 2002, 2003, and 2005 revealed Plaintiff had no lifting restrictions (Tr. 572, 718,

719, 721).[8] A March 27, 2003 treatment note indicated Plaintiff could do light duty work and had no other restrictions, while a January 14, 2005 note indicated that Plaintiff's only work-related restriction was climbing at unprotected heights (Tr. 710, 718). In fact, on January 14, 2005, Plaintiff advised Dr. Waters that he was having no pain (Tr. 710).

Plaintiff asserts there is error in the ALJ's failure to consider the opinions of treating physicians Drs. Oscar DePaz and Robert Silvera. Plaintiff's Brief at 19-20. This assertion is without merit. By Plaintiff's own admission, Dr. DePaz treated Plaintiff from February 2, 1997 through December 9, 1999. Plaintiff's Brief at 16. The record reveals Plaintiff saw Dr. DePaz seven times from 1997 through 1999, with complaints of persistent back and hip pain, for which physical therapy was prescribed (Tr. 235-36, 265-79). During the relevant period of time, Plaintiff's alleged disability onset of November 7, 1999 through December 9, 1999, Plaintiff was found to be disabled. Consequently, any failure to discuss Dr. DePaz's notes and opinion evidence explicitly was, at most, harmless error.

Similarly, Dr. Silvera saw Plaintiff from August 11, 1992 through December 18, 2000. Plaintiff's Brief at 20. Throughout these visits, Plaintiff had complaints of numbness and pain in the lower extremities, pain in his lower back and pain in his neck (Tr. 396-449). Plaintiff was treated with epidural injections, pool physical therapy, prescription medication and the right hip replacement in 1996. *See id.* During the relevant period of time, Plaintiff's alleged disability onset of November 7, 1999 through the date he last saw Dr. Silvera,

---

[8]See n. 7, supra, for discussion of temporary restriction from work while a hip aspiration was performed on Plaintiff at the site of Plaintiff's hip replacement in June 2002.

December 18, 2000, Plaintiff was found to be disabled. Consequently, any failure to discuss Dr. Silvera's notes and opinion evidence explicitly was, at most, harmless error.[9]

There was no need to discount any of this evidence since it supported the ALJ's conclusion Plaintiff was disabled from November 7, 1999 through January 27, 2002. The ALJ thus properly considered Plaintiff's treating physicians' opinions in assessing Plaintiff's RFC and gave Dr. Waters' opinion evidence great weight. *See Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).

Notably, Plaintiff does not attack the RFC finding which limited Plaintiff to sedentary work with no climbing of ladders, ropes, or scaffolds, occasional postural activities such as occasional ramp/stair climbing, balancing, stooping, kneeling, crouching, and crawling (Tr. 787, Finding no. 14); a finding that was more restrictive than indicated by Dr. Waters.

---

[9]Contrary to Plaintiff's assertion, the ALJ considered Plaintiff's complaints of back pain. In the discussion of Plaintiff's asserted back pain, the ALJ refers to Plaintiff's testimony and to related evidence (*see* Tr. 792-94). During a hospital admission on June 6, 2002, Plaintiff was diagnosed with low back pain, facet arthropathy, degenerative joint disease, epidural fibrosis, and sacroiliac joint dysfunction and was therefore given steroid injections with bilateral L-4-5, L-5, S-1 facet (Tr. 688-704). The ALJ gave explicit consideration to this evidence (Tr. 793). At the hearing Plaintiff complained of lumbar spine pain including numbness and tingling down his right arm and leg (Tr. 916). Plaintiff also admitted he did not take any medications to treat these symptoms. *Id.* The ALJ references this testimony, the neurosurgical consultation of Plaintiff that occurred on November 3, 2008 and the October 2008 MRI and CT Scan of Plaintiff's cervical spine, which is the most recent medical evidence in the record concerning this alleged impairment (*see* Tr. 793–94, 844-58). The ALJ gave Plaintiff the benefit of the doubt regarding these additional impairments and took them into account in the RFC assessment of Plaintiff's remaining ability to do work related activities (*see* Tr. 793-93, Tr. 791 Finding no. 14). The ALJ found Plaintiff could do no repetitive pushing and pulling with the upper extremities, must avoid extreme cold, heat, wetness, humidity, avoid work vibrations and must avoid dangerous work hazards (Tr. 791).

**VI. CONCLUSION**

The ALJ is required to weigh the evidence of record, and apply the applicable standards set forth in the applicable regulations and case law.  If pain is an issue in the case, an ALJ within this circuit is obligated to consider pain testimony and determine if there is:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote,* 67 F.3d at 1560 -1561. If an ALJ elects to disregard the medical opinion of a treating physician, then he or she must clearly articulate the reasons for so doing.  *See Phillips v. Barnhart*, 357 F.3d at 1240-41.

In the instant case, the ALJ explicitly credited Dr. Waters' opinions and found Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not credible beyond January 27, 2002 when Plaintiff experienced medical improvement in his condition (*see* Tr. 788-90, 793-94).  The Court finds the notes of Dr. Waters (Tr. 521-56, 565-72, 741), the Physical Residual Functional Capacity Assessment completed by a reviewing DDS physician on March 15, 2002 (Tr. 557-64), Plaintiff's testimony and that of the vocational expert (Tr. 905-31) constitute substantial evidence in the record for ALJ Martin find Plaintiff's pain testimony was only partially credible and Plaintiff experienced medical improvement as of January 28, 2002.

Moreover, the Court further finds that the record contains sufficient medical evidence upon which the ALJ could make an informed decision regarding Plaintiff's disability determination. *Graham v. Apfel*, 129 F.3d 1420, 1422-23 (11th Cir. 1997).

Accordingly, for the reasons stated herein, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

The Clerk of the Court is directed to enter judgment consistent with this ruling and, thereafter, to close the file. Each party shall bear its own costs.

**DONE AND ORDERED** at Jacksonville, Florida this 25th day of September, 2012.

Copies to all counsel of record
and *pro se* parties, if any

THOMAS E. MORRIS
United States Magistrate Judge